hWALTZER, Judge.

STATEMENT OF THE CASE

Bank of Louisiana (BOL) brought suit on open account pursuant to La. R.S. 9:2781 against William S. Smith, Jr., for merchandise charged to Smith’s BOL credit card. Following trial, the court rendered judgment in favor of BOL for $5,283.97 plus interest and attorney’s fees. From this judgment, Smith appeals. We reverse.

STATEMENT OF FACTS

James Comiskey, BOL President, testified that he was only generally familiar with Smith’s BOL account, and had no personal knowledge of the disputed charges or BOL’s investigation of the claim. According to Comiskey, Smith, a long-time personal friend, came to him and told him that a business associate of Smith’s, who was using Smith’s card for business purposes had abused the use of the card and made unauthorized charges. Comiskey wrote a memorandum to Clarence Mashotter, the head of BOL’s credit department, explaining Smith’s allegations and told Smith to see Mashotter. Comiskey was told that Smith met with Mashotter, but that the transaction broke down when Smith refused to sign the usual affidavit certifying to fraudulent use of the credit card. Comiskey identified a certified mailing from BOL’s credit card operation addressed to Smith as containing unsigned affidavits of the type used by BOL in cases of fraudulent | gcredit card use. Smith testified that the post office box address on the letter was his mailing address, but he was unable to explain definitively why he did not claim the certified letter, suggesting that it could have arrived while he was absent from the city. The purpose of the affidavit, according to Comiskey, is to enable BOL to pursue its claim against the proper person. Smith told Comiskey that he went to see Mashotter and did not sign the affidavit Mashotter presented to him. Comiskey told Smith he would have to sign in order to cancel the charges, and that BOL would sue Smith unless he signed, but Smith did not seem to want to sign the affidavit, but gave no reason for his refusal. Comiskey testified that Mashotter told him that Smith had been asked to and réfused to sign the fraud affidavit; however, this testimony was properly rejected as hearsay, since Mashotter, BOL’s employee, was not called to testify.
Smith testified that he met numerous times with Comiskey concerning the disputed charges on his statement of 15 July 1991 and that Comiskey advised him he would have to follow proper channels to cancel the allegedly fraudulent charges. Smith denied that he was given the opportunity to sign the fraud affidavit, testifying that when he offered to sign the affidavit, Mashotter told him it was too late. BOL did not call Mashotter, its employee, to refute that testimony. Smith testified that the disputed charges were made by PTA travel agency and Bob Alvarez. Smith testified that he, himself, purchased a round trip airline ticket to Las Vegas from PTA Travel for his associate, Curtis Johnston, using his credit card, and paid the charge for the ticket. Smith denied having given Johnston his account number for use on the trip and denied having authorized Alvarez, PTA Travel or Johnston to use his credit card number.
|sSmith testified that, at Comiskey’s advice, he went to see Mashotter, who told him that BOL was investigating the Alvarez-PTA Travel charges, and would advise Smith “when they came up with something.” Smith denied that Mashotter presented him an affidavit at that time. According to Smith, *858 Mashotter presented the affidavit to him in January or February of 1992, but told him that it was too late to sign it. Smith denied that he had refused to sign the affidavit.

FIRST ASSIGNMENT OF ERROR: BOL failed to prove open account purchases or purchases made on a credit card issued to Smith.

BOL sued Smith by a “Petition in Suit on Open Account.” Attached as exhibits to the suit were an affidavit by counsel for BOL averring familiarity with BOL’s accounts. The cardholder agreement is not attached to the affidavit, although it is referred to as being attached. The affidavit alleges that Smith made charges for merchandise on a BOL credit card and states a balance of $5,283.97. Although statements from January (balance $3,595.20), February (balance $3658.57), March (balance $3712.99) and April (balance $3777.48) 1992 are attached to the affidavit, none of these statements show the nature or amount of the disputed charges that, according to Smith’s testimony, were shown on the 15 July 1991 statement, which was not produced. Plaintiffs exhibits consisted of two demand letters, dated 13 April 1992 (demanding $3,712.99) and 6 September 1992 (demanding $5,283.97), which likewise do not refer to the nature or amount of the original purchases, and an unopened envelope postmarked 9 August 1991, marked by the post office “unclaimed” which BOL claims originally contained a fraud affidavit to be signed by Smith.
UBOL has offered no evidence tending to explain the approximately $1500 discrepancy between the amounts shown on the statements attached to the petition and the amount for which it brought suit. Neither has it offered evidence of purchases made by Smith on open account. BOL failed to call its employee, Mashotter, to prove its claims that the purchases were authorized and that Smith refused to cooperate with BOL’s investigation, or to refute Smith’s testimony.
This Court has held that a creditor suing on an open account has the burden of proving that the debtor contracted for the sales on an open account. For there to be an action on an open account, there must necessarily be a contract which gave rise to the debt. Metrospec Computers & Supply, Inc. v. R.A. Roldan & Co., Inc., 94-0102 (La.App. 4 Cir. 9/29/94), 643 So.2d 833, 835.
BOL has failed to provide evidence of the existence of such a contract or of the amount of the alleged indebtedness. Although the amount owing on an open account is a question of fact as to which the trial judge’s findings may not be disturbed absent a finding of manifest error, in the instant case resolution of the issue does not involve the acceptance of the testimony of one witness and the rejection of another based on credibility. See, Texas Industries, Inc. v. Roach, 426 So.2d 315, 317 (La.App. 2 Cir. 1983). The issue here is not credibility of the evidence but sufficiency of the evidence. No statements or invoices showing purchases of merchandise or services were introduced. The testimony is not contradictory. In this ease, the manifest error rule does not apply. See Patterson v. Garic, 411 So.2d 1091, 1094 (La.App. 4th Cir.1982), writ denied, 415 So.2d 950 (La.1982).
|5BOL relies on Cities Service Co. v. Pailet, 452 So.2d 319 (La.App. 4 Cir.1984) in support of its claim that Johnston and Alvarez were authorized debtors on Smith’s credit card. That ease, brought under the federal Truth-In-Lending Act, 15 U.S.C.A. sec. 1643,[1] is inapposite to the instant case. Pallet’s disputed invoices were introduced. Pailet admitted that he had given his credit card to his employee, and claimed that he had revoked her authority prior to having received calls from Cities Service concerning his overdue balance. There was no evidence that *859 plaintiff was notified of the revocation. BOL, unlike Cities Service, provided no proof that Johnston, or Alvarez were authorized at any time to charge merchandise to Smith’s credit card account, and that PTA Travel’s authority was limited to the single charge made and paid for by Smith. Smith was the only witness with personal knowledge of the transactions at issue.
We conclude that BOL has not produced sufficient evidence to sustain its burden of proving its claim on open account.

CONCLUSION

BOL having failed to prove its claim on open account, the judgment of the trial court is REVERSED. In light of our disposition of Smith’s first assignment of error, the remaining assignments of error are moot.

REVERSED.

. BOL has not brought suit under the federal Truth-in-Lending Act, 15 U.S.C.A. sec. 1643, which governs liability of credit card holders. That statute, sec. 1643(b), imposes upon a card issuer the burden of showing that the use of the card was authorized or, if the use was unauthorized, then to show that the conditions of liability for the unauthorized use of a credit card set forth in 15 U.S.C.A. sec. 1643(a) have been met. This liability has a statutory maximum limit of $50. 15 U.S.C.A. sec. 1643(a)(1)(B). Under the federal statute, and the evidence adduced by BOL, Smith's liability would be limited to $50.00.